# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

RACHEL WALKER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security Operations,

    Defendant.

Case No. 3:17-cv-05579-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms defendant's decision to deny benefits.

## FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Ms. Rachel Walker, suffered a laceration of her right wrist on October 17, 2010 while working at Saint Joseph Medical Center in Tacoma, Washington. Dkt. 9 Administrative Record (AR) 683-686. She had two surgeries (October 2010 and April 2012) for the injury to her wrist. AR 700-703, 803, 805-808. She underwent surgery for cervical C4-7 discectomy and fusion (with allograft and plating) on September 16, 2015. AR 899, 903.

On April 4, 2014, plaintiff filed an application for disability insurance benefits alleging that she became disabled beginning January 1, 2013. AR 199-205, 209-215, 216-225. The

ORDER - 1

application was denied on initial administrative review and on reconsideration. AR 145-47, 152-56. A hearing was held on November 24, 2015 before ALJ Robert P. Kingsley at which plaintiff appeared and testified, as did a vocational expert. AR 31-64.

In a written decision dated January 29, 2016, the ALJ documented his analysis at each of the five steps of the Commissioner's sequential disability evaluation process. AR 8-30. At the first step, the ALJ considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). At the second step, the ALJ considers "the severity of the claimant's impairments. *Id.* If the evaluation process "continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the ALJ considers the claimant's residual functional capacity ("RFC") "in determining whether the claimant can still do past relevant work" at step four, "or make an adjustment to other work" at step five. *Id.*

In this case, steps one and two were resolved in plaintiff's favor. AR 13. At step two, the ALJ found plaintiff had the following severe impairments: right wrist laceration status post surgeries, conversion syndrome, mild spondylosis at L5, and degenerative disc disease of the cervical spine status post cervical discectomy and fusion. AR 13-14. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 15. The ALJ then considered plaintiff's RFC and found at step four that she could not perform her past relevant work, AR 15-22, but that she could perform other jobs that exist in significant numbers in the national economy at step five, and therefore she was not disabled, AR 22-23.

Plaintiff's request for review was denied by the Appeals Council on February 11, 2016, making the ALJ's decision the final decision of the Commissioner. Plaintiff filed an appeal on July 27, 2017. AR 1-7; Dkt. 1, 4; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings. She alleges the ALJ erred: (1) in evaluating the medical opinion evidence of Dr. Neville Lewis, M.D.; (2) in evaluating the "other source" opinions of treating professional Heidi Bray, Advanced Registered Nurse Practitioner (ARNP), and occupational therapist Julie Milasich, OTR/L, CHT; (3) in evaluating the lay witness testimony of plaintiff's neighbor Nicole Brown; (4) in rejecting plaintiff's subjective symptom testimony; and (5) given these errors, in assessing plaintiff's RFC and in finding at step five that plaintiff could perform other jobs and therefore was not disabled. Dkt. 11.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by

locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I. <u>ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

Plaintiff challenges the ALJ's decision rejecting the opinion evidence of treating physician, Dr. Neville Lewis, M.D.; treating ARNP, Heidi Bray; and occupational therapist, Julie Milasich, OTR/L, CHT. Dkt. 11 at 4-10. Defendant argues, however, and the Court agrees that the ALJ did not err in rejecting this evidence. Dkt. 12 at 5-8.

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester,* 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

When a treating physician's opinion is not contradicted it will be given controlling weight, if it is well-supported by medically acceptable clinical and laboratory techniques and is consistent with substantial evidence in the case record. *Trevizo v. Berryhill*, 871 F.3d 664, 675

(9th Cir. 2017). The Court will affirm the ALJ's rejection of an uncontradicted opinion from a treating or examining physician if the ALJ gives clear and convincing reasons, supported by substantial evidence. *Id.*

When a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). The ALJ is required to "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" and failure to consider these factors before rejecting a treating physician's contradicted opinion is reversible error. *Trevizo,* 871 F.3d at 676.

### a. Dr. Lewis, treating physician

Plaintiff argues that the ALJ erred in rejecting Dr. Lewis' opinion, that Dr. Lewis supported his opinion with clinical findings. Plaintiff contends that Dr. Lewis' opinion is not internally inconsistent, because Dr. Lewis' variations between plaintiff's ability to lift one and five pounds were estimates, offered on a short term basis, based on similar clinical findings, and all consistent with a reduced sedentary exertion level. Dkt. 11 at 5-6.

The ALJ gave Dr. Lewis' opinion little weight because the assessments were: (1) internally inconsistent; (2) inconsistent with the longitudinal record; and (3) inconsistent with

plaintiff's daily activities. AR 17, 18, 21. The ALJ did not make a finding that Dr. Lewis provided an opinion that was in conflict with the opinions of other physicians. *Id.* Nor did the ALJ make any findings about the length of the treating relationship, the frequency of examination, or the nature and extent of the treatment relationship. *Id.* The ALJ found Dr. Lewis' opinion to be internally inconsistent because in one portion of the record Dr. Lewis opined that plaintiff was unable to use her right hand, but then also opined that she could occasionally lift between one to five pounds. AR 21 (citing AR 749-808, 870-873). The ALJ further noted that Dr. Lewis limited plaintiff to sedentary work for one to ten hours per week, but at the same time opined that she could perform light duties. *Id.*

Internal inconsistencies within a treating physician's report are relevant evidence in judging the weight to be attributed to that report. *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of a treating physician's contradicted medical opinion that was internally inconsistent).

The opinion that plaintiff cannot use her right hand is, for example, a greater limitation than, and thus inconsistent with, the ability to occasionally lift between two and five pounds. *Compare* AR 779 (plaintiff cannot use right hand) *with* AR 755, 757, 760, 762, 766, 799 (plaintiff can occasionally lift between two to five pounds with her right hand). And although Dr. Lewis' examinations occurred within weeks of each other, plaintiff acknowledges that both opinions, despite their discrepancies, were based on similar clinical findings. *See id.;* Dkt. 11 at 5-6.

The ALJ also noted that Dr. Lewis limited plaintiff to sedentary work for one to ten hours per week, but also opined that she could perform light duties. AR 21. Plaintiff argues that the ALJ misconstrued the term "light duty work" as defined by the Washington State Department of

ORDER - 6

Labor & Industries (L&I) to mean "light work" under the Social Security Regulations. Dkt. 11 at 6. Defendant contends that Dr. Lewis had filled out paperwork contemplating the definition of "light work" from the Social Security Regulations, and thus, his reference to "light work" reflected the definition under those regulations. Dkt. 12 at 5-6 (citing AR 780).

Dr. Lewis opined that plaintiff was limited to sedentary work on a state agency disability evaluation form.[1] AR 780. On several other occasions, however, when Dr. Lewis saw plaintiff, he limited her to "light" duties or "light duty" work. AR 785-87, 790-91, 797-98, 801, 872. Because Dr. Lewis completed the state agency evaluation rom around the same time he saw plaintiff, *see id.*, it is unclear whether he intended his reference to light duties or light duty work to be consistent with "light work"[2] as defined under the Social Security Regulations.

Regardless, Dr. Lewis' opinion that plaintiff could perform sedentary work – including frequently (defined as 2.5 to 6 hours in an 8-hour day) lifting or carrying articles such as files and small tools – is inconsistent with his opinion that plaintiff cannot use her right hand. This is because unskilled sedentary work requires good use of *both* hands and fingers. *See* SSR 96-9p, 1996 WL 374185; AR 780.

The Court finds the ALJ reasonably found the overall inconsistency of Dr. Lewis' findings undermined his opinion concerning plaintiff's work limitations. Thus, ALJ had substantial evidence and a specific and legitimate reason to give little weight to this opinion evidence.

---

[1] Sedentary work is defined as: "able to lift 10 pounds maximum and frequently lift or carry such articles as files and small tools." AR 780. *See also* 20 C.F.R. § 404.1567(a). Frequently is defined as "person is able to perform the function for 2.5 hours to 6 hours in an 8-hour day. It isn't necessary that performance be continuous." AR 780.

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

With respect to the ALJ's finding that Dr. Lewis' opinion is inconsistent with the longitudinal record and plaintiff's daily activities, the ALJ fails to explain why or how this evidence contradicts Dr. Lewis' opinion. *See* AR 21; *Trevizo,* 871 F.3d at 676 (internal citation omitted). The ALJ did not elaborate on *which* daily activities conflicted with *which* part of Dr. Lewis' opinion. AR 21; *See Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). Moreover, an ALJ's rejection of a physician's opinion on the ground that it is contrary to clinical findings in the record is improperly "broad and vague," and fails to specify why the ALJ felt Dr. Lewis' opinion was flawed. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

The Ninth Circuit has unequivocally stated that it is not the job of the reviewing court to comb the administrative record to find specific conflicts. *Burrell*, 775 F.3d at 1138. Therefore, the Court finds that this conclusory reasoning constitutes an insufficient basis on which to reject Dr. Lewis' opinion. *See Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion).

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Because the ALJ provided at least one specific and legitimate reason, supported by substantial evidence, for giving little weight to Dr. Lewis' opinion, any other improper reason the ALJ may have given to reject that opinion was harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("the relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error"); *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting Plaintiff's testimony); *Dukellis v. Colvin,* 2013 WL 6852040, at *7 (N.D. Cal. Dec. 30, 2013) (finding error was harmless because other specific and legitimate reasons supported the ALJ's decision to reject or give reduced weight to examining physician's opinion).

        b.        <u>Heidi Bray, treating ARNP</u>

Plaintiff contends that the ALJ did not provide sufficient reasons in rejecting the opinion of treating nurse, Ms. Bray, that plaintiff could lift at most ten pounds. Dkt. 11 at 9 (citing AR 905, 926).

To reject the opinion of a source that is not an "acceptable medical source," the ALJ needs to give reasons germane to reject that opinion. *Revels v. Berryhill,* 874 F.3d 648, 655, 665 (9th Cir. 2017). Whether an opinion is from an acceptable medical source or a medical source that is not acceptable, the ALJ should weigh the opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Id.*; *see* 20 C.F.R. § 416.927(c)(1)-(6), (f)(1).

The ALJ rejected Ms. Bray's opinion that plaintiff could lift no more than ten pounds on the basis that Ms. Bray is not an acceptable medical source. AR 21. The ALJ also found that Ms. Bray's opinion was inconsistent with the clinical findings of other treatment providers,

ORDER - 9

specifically Dr. Sheila Smitherman, M.D., who found that plaintiff had near full strength and sensation and normal reflexes in the upper extremities. AR 21. Further, the ALJ discounted Ms. Bray's opinion on the basis that it "appears related to the claimant's recovery from cervical surgery." AR 21.

While the ALJ may not, solely on the basis that Ms. Bray is not an acceptable medical source, reject her opinion that plaintiff cannot lift more than ten pounds, *see Haagenson v. Colvin,* 656 Fed. Appx. 800, 802 (9th Cir. 2016), the ALJ gave two other, germane reasons to reject that opinion.

First, the ALJ determined that her opinion was contradicted by the clinical findings of Dr. Smitherman. AR 21; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with the medical evidence is germane reason for discrediting the testimony of a lay witness); *see also Edgecomb v. Colvin*, 2014 WL 12684489, at *3-4 (W.D. Wash. Feb. 18, 2014), *aff'd*, 671 F. App'x 517 (9th Cir. 2016) (lack of explanation and objective support for other-source medical opinions is a germane reason to reject them). For example, clinical findings from Dr. Smitherman indicated that plaintiff had full strength in all muscle groups, except those for which she gave poor effort, and even then, plaintiff's strength was noted to be only slightly reduced. AR 882.

In addition, Ms. Bray noted that plaintiff complained of "intense stabbing pain at the base of her neck, muscle spasms." AR 903. Given this observation, the ALJ reasonably determined that Ms. Bray's opinion that plaintiff could not lift more than 10 pounds related to plaintiff's recovery from cervical surgery, rather than to her hand pain. That determination thus is supported by substantial evidence.

Accordingly, the ALJ did not err in rejecting Ms. Bray's opinion. *See Molina*, 674 F.3d at

1111 (upholding rejection of medical opinions from a non-acceptable source "on the grounds that [they] were 'quite conclusory,' provided very little explanation of the evidence relied on, were not supported by [the claimant]'s objective medical condition, and were inconsistent with the opinion of . . . the examining psychiatrist").

### c. Julie Milasich, OTR/L, CHT

Next, plaintiff argues that the ALJ erred in rejecting the opinion of Ms. Milasich, an occupational therapist. Dkt. 11 at 10.

On November 22, 2013, Ms. Milasich performed a physical capacities evaluation, opining that plaintiff was limited to sedentary work, and that the use of her right hand was severely limited based on the objective strength, range of motion and credible pain with any use of her right upper extremity. AR 641-42.

The ALJ rejected Ms. Milasich's opinion because she was not an acceptable medical source, and because her opinion was contradicted by the opinion of Dr. Smitherman, as well as those of other treatment providers. AR 20. Specifically, the ALJ noted that Dr. Smitherman found plaintiff had near full strength and sensation in her upper extremities, normal reflexes in the upper and lower extremities, and intact gait. AR 20 (citing AR 809-869).

As noted above, the ALJ cannot reject Ms. Milasich's opinion solely on the basis that she is not an acceptable medical source. *See Molina*, 674 F.3d at 1111; SSR 06-03p, *available at* 2006 WL 2329939 at *2 (occupational therapists are considered "other sources"). Here, though, the ALJ gave a germane reason to reject that opinion, as the ALJ determined that it was contradicted by Dr. Smitherman's clinical findings. AR 21; *Bayliss*, 427 F.3d at 1218; *see also Edgecomb*, 2014 WL 12684489, at *3-4. Those findings indicated that plaintiff had full strength in all muscle groups, except those which she gave poor effort, and even then, her strength was

ORDER - 11

only slightly reduced. AR 882. Thus, the ALJ did not err in rejecting Ms. Milasich's unsupported opinion. *See Molina*, 674 F.3d at 1111.

II. Plaintiff's Subjective Symptom Testimony

Plaintiff testified that she wore a brace on her right hand all the time, could lift five pounds, and could only use her right arm for 15-20 minutes before experiencing pain, numbness, and dropping things. AR 16, 43, 52. Plaintiff testified that her right hand pain inhibits her ability to complete most daily tasks, and her pain level was an eight to ten or more. AR 16. Plaintiff also testified that her pain medications made her sleepy, and that she had ongoing numbness and tingling in her left shoulder and arm after her cervical fusion. AR 16, 40, 49.

The ALJ found that plaintiff's allegations were not fully credible for several reasons: (1) inconsistent with the RFC; (2) inconsistent with daily activities and work as a crossing guard; (3) symptom exaggeration; and (4) inconsistent with the medical evidence. AR 16-19. Plaintiff argues that the ALJ improperly rejected her subjective symptom testimony.

a. Inconsistent with RFC

As noted, the ALJ discounted plaintiff's testimony because it was inconsistent with the RFC. AR 16-18. Because plaintiff's subjective symptom testimony must be taken into account in assessing the RFC, it cannot then be discredited because it is inconsistent with that RFC. *Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)). This is not a valid reason to reject plaintiff's subjective symptom testimony.

b. Inconsistent with Daily Activities and Work History

The ALJ also found that plaintiff's subjective symptom testimony was inconsistent with her daily activities and work as a crossing guard. AR 19. Plaintiff does not explicitly challenge the ALJ's finding with respect to her daily activities, but contends that her work as a crossing

guard is not inconsistent with sedentary work and occasional use of her right hand. Dkt. 11 at 12-13. The Court agrees.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. *Smolen*, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." *Id.* A claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996). Second, a claimant's activities of daily living can "contradict his other testimony." *Orn,* 495 F.3d at 639. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff testified that everything she does causes her pain because of the use of her hands, that she can only use her right hand for about 15 to 20 minutes before she will start to experience pain and numbness and start dropping things, and that she has to pick and choose what activities she will engage in (for example, she won't shower so that she can cook her son dinner). AR 41-42, 52-53. Plaintiff further testified that when she does make meals, she mostly uses the microwave. AR 41. Her testimony is similar to her statements in her function reports. AR 261-272, 382-388.

The ALJ found that plaintiff's daily activities were inconsistent with her allegations of disabling limitations. Specifically, the ALJ found that she reported taking care of her son, preparing meals, performing household chores, going outside daily, driving a car, and shopping.

AR 19. Further, the ALJ found that plaintiff worked after the alleged onset of disability as a crossing guard, two hours per day, five days per week beginning September 1, 2013. AR 19.

However, none of the limited, primarily in-home activities, cited by the ALJ establish that plaintiff could perform basic work activities on a regular and continuing basis in a work setting. *See Smolen*, 80 F.3d at 1287 n. 7; *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

Moreover, plaintiff's testimony reflects that her activities of daily living are even more limited than noted by the ALJ. For example, the record reflects that plaintiff's neighbor, Ms. Brown, and plaintiff's mother help plaintiff with daily hygiene including cutting her nails and shaving and housework including laundry, cooking, and cleaning. AR 358. In her function report, plaintiff reported that it is difficult to get dressed or do her hair. AR 358. Plaintiff also reported that she cannot drive alone more than 30 minutes because it hurts her hand, and that she drives as little as possible. AR 361. Thus, the evidence fails to reveal that plaintiff spends a substantial part of her day performing any of these activities or that the level at which she performed them is transferable to the work setting.

With respect to plaintiff's work history as a crossing guard, there is no evidence showing that plaintiff held herself out as capable of full-time work. *See, e.g.*, *Carmickle v. Commissioner,*

*Social Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations"). Rather, plaintiff worked a total of ten hours per week (two hours per day, five days per week). Therefore, this is not a valid reason to discount plaintiff's credibility.

The ALJ views plaintiff as a normal functioning adult who carries out various domestic responsibilities without difficulty. However, the record does not support that conclusion. Thus, this is not a valid reason to discount plaintiff's credibility.

        c.      <u>Symptom Exaggeration</u>

The ALJ further rejected plaintiff's subjective symptom testimony because the evidence suggested she exaggerated her symptoms and limitations. AR 19.

A tendency to exaggerate symptoms is appropriate in assessing a plaintiff's credibility. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based on, among other things, a tendency to exaggerate, was supported by substantial evidence). Here, the ALJ identified treatment notes from Dr. Robyn Davies, M.D. which stated that plaintiff's "gait [was] antalgic with some exaggerated features." AR 19 (citing AR 810). Dr. Davies also noted that although plaintiff reported that her back pain was severe and that she had limited mobility, she drove herself to her the doctor's appointment and was still working as a crossing guard. AR 809-810. Plaintiff argues in her reply that Dr. Davies' statement was related to an abnormal gait, not a signal of plaintiff of providing exaggerated symptoms. Dkt. 14 at 8.

While the precise meaning of the "exaggerated" language used in Dr. Davies' treatment notes is susceptible to more than one reasonable interpretation, the additional language noting

that plaintiff was able to drive to the appointment herself and work as a crossing guard suggests that Dr. Davies believed plaintiff was exaggerating her symptoms. Therefore, the Court concludes the ALJ's finding that plaintiff exaggerated her symptoms supports the credibility determination. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)) (It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld.").

        d.       <u>Inconsistent with Objective Medical Evidence</u>

The ALJ also found that although plaintiff alleged that she had significant functional limitations related to her right wrist and hand, the objective evidence from Drs. Lewis, Smitherman, and Steinitz contradicted her testimony. AR 18-19. Plaintiff contends that the opinions of Drs. Smitherman and Lewis, Ms. Bray, and Ms. Milasich all support her claim that she could only lift five pounds for about 15 to 20 minutes before experiencing pain and numbness, had trouble sleeping due to pain, had medication side effects of drowsiness, and needed to wear a brace on her right hand at all times. Dkt. 11 at 13.

Determining that a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v.*

1 *Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

The ALJ's finding is supported by substantial evidence in the record. Dr. Steinitz found that plaintiff's elbow and wrist motion were reasonable and there were no findings for a significant form of right carpal tunnel syndrome. AR 624. An electrodiagnostic study of the upper extremities was mildly abnormal and showed no findings for a significant focal right ulnar neuropathy. AR 624, 625, 630.

Contrary to plaintiff's contention, Dr. Smitherman's treatment notes do not support plaintiff's testimony, as she indicated that plaintiff had full strength in all muscle groups, except those which she gave poor effort, and even then, her strength was only slightly reduced. AR 882. Dr. Lewis also found that plaintiff had good flexibility of the wrist and digits without clawing. AR 749-808, 870-873. While Ms. Milasich opined that plaintiff was limited to sedentary work and that the use of her right hand was severely limited, evidence from an occupational therapist is afforded less weight than that of acceptable medical sources such as Drs. Steinitz and Smitherman. *See* SSR 06-03p. And as discussed above, Ms. Bray's opinion that plaintiff could only lift ten pounds appears to be related to plaintiff's cervical surgery. AR 903, 905, 926.

Therefore, plaintiff's testimony is at odds with the objective medical evidence, which provides a reasonable basis for upholding the ALJ's conclusion. Moreover, the ALJ did not discredit plaintiff's subjective complaints solely on the basis of objective medical evidence, because, as noted above, the ALJ provided additional valid reasons based on substantial evidence in the record, including plaintiff's symptom exaggeration. Therefore, the ALJ properly relied on the objective medical evidence as a factor in making his adverse credibility determination. *See Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence

cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

e. Harmless Error

Because the ALJ provided two specific and legitimate reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony, any other errors the ALJ made in assessing plaintiff's credibility were harmless. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

III. Lay Witness Testimony

Plaintiff challenges the ALJ's rejection of the testimony of Ms. Nicole Brown, plaintiff's neighbor. Ms. Brown testified that she had observed that plaintiff had difficulty grasping or grabbing anything in her right hand, which became more impossible after a few minutes. AR 349. Ms. Brown testified that plaintiff missed a lot of sleep due to the pain, could not close her fingers to zip or button, hold a razor or brush, and had difficulty wiping when using the toilet. AR 350. Ms. Brown estimated plaintiff could only lift a pound with the right hand. AR 354.

The ALJ rejected Ms. Brown's testimony because it repeated plaintiff's own complaints and was inconsistent with the medical evidence. AR 22, 349-356. The Court finds these reasons to be valid. Lay witness testimony by friends, neighbors, and family members in a position to observe the claimant's symptoms is competent evidence. *See Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987); *Bilby v. Schwieker,* 762 F.2d 716, 719 n. 3 (9th Cir. 1985); 20 C.F.R. § 404.1513(e)(2). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague,* 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2)).

First, Ms. Brown's testimony does not provide any specifics or examples that are independent of plaintiff's testimony. *See* AR 273-280 (plaintiff's function report); AR 349-356

ORDER - 18

(Ms. Brown's testimony); AR 37-54 (plaintiff's testimony). Rather, the information that she provided is cumulative of plaintiff's testimony, and therefore does not further demonstrate the severity of plaintiff's impairments. Thus, because Ms. Brown's statements were of the same general nature as plaintiff's testimony, the ALJ's valid reasons for discounting plaintiff's statements apply to Ms. Brown's testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *Fry v. Berryhill,* 2017 WL 3149890, at *5 (E.D. Cal. July 25, 2017).

Moreover, inconsistency with medical evidence is a valid reason for discounting a lay witness statement. *Bayliss*, 427 F.3d at 1218. As discussed above, the medical evidence showed that plaintiff had full strength in all muscle groups except those which she gave "poor effort," an objective study was normal for the most part, and showed no significant findings for neuropathy on the right hand, and plaintiff had intact sensation and nearly full strength. AR 624, 625, 630, 882-83. Therefore, the ALJ did not err in rejecting Ms. Brown's opinion.

IV. RFC, Hypothetical Questions and Step Five Findings

Plaintiff argues that given the alleged errors in the ALJ's analysis of the opinion evidence and plaintiff's subjective symptom testimony, the ALJ's RFC and hypothetical questions were incomplete and substantial evidence does not support the step five finding. Dkt. 11 at 1, 14. Plaintiff is unable to establish any reversible error on the part of the ALJ in finding her to be not disabled, and therefore the RFC and hypothetical are not erroneous.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. Therefore, the ALJ's decision is affirmed.

Dated this 30th day of May, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 20